**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                          No. CR 19-0928 JB

GREGORY DIAZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Second Amended Petition for Revocation of Supervised Release, filed February 27, 2025 (Doc. 89)("Amended Petition"). The Court held a first evidentiary hearing on April 28, 2025, see Clerk's Minutes at 1, filed April 28, 2025 (Doc. 102)("Hearing I Clerk's Minutes"), and a second hearing on May 9, 2025, see Clerk's Minutes at 1, filed May 9, 2025 (Doc. 104)("Hearing II Clerk's Minutes"). The primary issue is whether the Defendant Gregory Diaz commits, while on supervised release, a New Mexico State felony of possession of a stolen vehicle when police find him in a stolen car and he lies to police about his identity. The Court concludes that: (i) Diaz commits a misdemeanor of concealing identity but not the felony of possessing a stolen vehicle, because the United States does not show, by a preponderance of evidence, that Diaz knows the car he is in is stolen; and (ii) Diaz's commits a Grade C violation pursuant to the Guidelines policy statement § 7B1.1(a)(1),(2), and (3); and (iii) Diaz' Guidelines sentencing range is 8 to 14 months.

## FACTUAL BACKGROUND

The Court describes Diaz' original crime and the judgment. The Court adopts facts in the Presentence Report, filed July 21, 2021 (Doc. 34)("PSR"), as its findings of fact. See Federal R.

Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact.").

1.    **Prior Convictions and Personal Background.**

Diaz has numerous criminal convictions.  First, in 2006, Diaz receives eighteen-months' probation for possession of a controlled substance: methamphetamine.  See PSR ¶ 33, at 8.  In 2007, Diaz receives three years of custody for child abuse after his child, a baby, is airlifted to a hospital with multiple bruises, fractures, and anal fissures.  See PSR ¶ 34, at 8.  In 2010, Diaz receives eighteen-months custody with a one-year habitual offender enhancement for possession of a controlled substance, methamphetamine.  See PSR ¶ 35, at 9-10.  In 2011, Diaz receives an eighteen-month sentence with a one-year habitual offender enhancement for possession of a firearm after police find him unconscious in a truck with a pistol.  See PSR ¶ 36, at 10.  In 2014, Diaz receives eighteen-months custody with a four-year habitual offender enhancement for residential burglary of a storage shed.  See PSR ¶ 37, at 11.  In 2017, Diaz receives eighteen-months custody with a one-year habitual offender enhancement for possession of a controlled substance, methamphetamine, and for driving while under the influence of drugs.  See PSR ¶ 38, at 12.  Finally, in 2018, Diaz receives eighteen-months custody with a one-year habitual offender enhancement, followed by two-years and six-months probation, for possession of a controlled substance, methamphetamine.  See PSR ¶ 39, at 13.

2.    **The Crime.**

After incurring multiple felony convictions which permanently ban him from possessing firearms and ammunition, Diaz sells a pistol to an undercover agent in October, 2018.  See PSR ¶ 11, at 5.  The Farmington Police Department determines that the pistol is a European American Armory Corporation (EAA) Witness-P model 0.4 S&W caliber semi-automatic pistol bearing a partially obliterated serial number of EA56326)11398.  See PSR ¶ 14, at 5. The Bureau of Alcohol,

Tobacco, Firearms, and Explosives (ATF) determines that the pistol is manufactured in Gardone, Italy. See PSR ¶ 14, at 5. On July 29, 2020, Diaz is arrested in San Juan County, New Mexico for violating 18 U.S.C. § 922(g)(1) and 924. See PSR ¶ 15, at 5-6.

## PROCEDURAL BACKGROUND

The Court describes Diaz' Judgment and sentence. Then, the Court describes the events leading up to his first revocation of supervised release. Finally, the Court describes the events leading up to the petition for his second revocation of supervised release.

### 1.    The Judgment.

On May 12, 2021, Diaz pleads guilty to felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1) and 924. See Plea Agreement at 2, filed May 12, 2021 (Doc. 33). On December 14, 2021, the Court sentences Diaz to 37-months custody, recommends that Diaz participate in the Bureau of Prisons' 500-hour drug and alcohol treatment program, and imposes a supervised release term of three years. See Judgment at 2-3, filed January 24, 2022 (Doc. 47). Additionally, the Court orders that Diaz participate in an outpatient substance abuse treatment program as a special supervised release condition. See Judgment at 5.

### 2.    The First Revocation of Supervised Release.

Diaz commences his term of supervised release in the District of New Mexico. On December 29, 2023, the United States Probation Office ("USPO") files an initial Petition for Revocation of Supervised Release after Diaz fails to attend substance-abuse counseling, admits to methamphetamine use, and fails to report for drug testing. Petition for Warrant or Summons for Offender Under Supervision as to Gregory Diaz at 1, filed December 29, 2023 (Doc. 50). On April 15, 2024, the Court revokes supervised release and sentences Diaz to eight-months custody, followed by two years of supervised release. See Violation of Supervision Proceedings Minute Sheet at 1, filed April 15, 2024 (Doc. 71)("First Revocation Minutes"). The Court also imposes

the special supervised release condition that Diaz participate in an outpatient substance abuse treatment program. First Revocation Minutes at 1.

    **3.**    <u>**The Petition for a Second Revocation of Supervised Release**</u>.

On September 24, 2024, Diaz commences his second term of supervised release and completes an initial intake with USPO. <u>See</u> USPO Violation Report at 1, filed November 12, 2024 (Doc. 74). At the end of his initial intake, Diaz reports immediately to the Icarus Alcohol and Drug Rehabilitation Center ("Icarus Center") in Albuquerque, New Mexico. <u>See</u> Violation Report at 1.

On October 16, 2024, USPO Officer Dylan Ruiz attempts to contact Diaz at the Icarus Center, but staff say that they cannot confirm or deny a patient's presence in the program. <u>See</u> Violation Report at 1. On November 1, 2024, Ruiz again attempts to contact Diaz at the Icarus Center; staff say that they currently do not have a patient named Diaz, and cannot confirm or deny whether Diaz was in the program previously. <u>See</u> Violation Report at 1. Ruiz also unsuccessfully attempts to contact Diaz and his family. Violation Report at 1. On November 12, 2025, Ruiz makes a final attempt to contact Diaz at the Icarus Center, and staff say that Diaz reported to the ninety-day inpatient substance abuse treatment program, but voluntarily walked away from the program on September 28, 2024. <u>See</u> Violation Report at 1. Diaz was "unsuccessfully discharged" from the program. Violation Report at 1. Ruiz again unsuccessfully attempts to contact Diaz and his family. <u>See</u> Violation Report at 1. When the USPO files the Petition, the USPO does not know where Diaz is, and all attempts to contact Diaz and his family are unsuccessful. <u>See</u> Violation Report at 1.

Ruiz files a Second Petition for Revocation of Supervised Release, alleging two violations of supervised release conditions, including one special supervised release condition and one standard supervised release condition. <u>See</u> Second Petition for Revocation of Supervised Release

at 1, filed November 12, 2024 (Doc. 73)("Petition").  For the special supervised release condition, the USPO alleges that Diaz does not participate in the required outpatient substance abuse treatment, because Diaz "voluntarily walked away from the program and was unsuccessfully discharged."  Petition at 1.  For the standard supervised release condition, the USPO alleges that Diaz does not notify Ruiz of his change of residence within 72 hours.  See Petition at 2.

> **4.** **The Operative Amended Petition for a Second Revocation of Supervised Release.**

Ruiz files a Second Amended Petition for Revocation of Supervised Release, filed February 27, 2025 (Doc. 89)("Amended Petition").  The Amended Petition adds the following allegation:

> On November 29, 2024, a criminal complaint was filed in the Farmington Magistrate Court, in Farmington, New Mexico, in case number M-47-MR-2024-00165, charging the defendant with Receiving Stolen Property (Receive)($250 or less)(misdemeanor) in violation of NMSA 30-16-11, Concealing Identity (misdemeanor) in violation of NMSA 30-22-03, and Receiving or Transferring Stolen Motor Vehicle in violation of NMSA 30-16D-04.  According to the criminal complaint, the defendant was found to be in possession of a stolen motor vehicle, which bared a stolen license plate, and concealed his identity from law enforcement.

Amended Petition at 2.  The Amended Petition alleges that Diaz commits a Grade B violation by committing a new felony charge: Receiving or Transferring Stolen Motor Vehicle in violation of NMSA 30-16D-04.  See Amended Petition at 2.  The Amended Petition, therefore, raises Diaz' Guidelines range from a Grade C violation's 8 to 14 months to a Grade B violation's 21 to 27 months.  See Violation Report at 2.  The United States does not concur with the Amended Petition, but the Amended Petition does not state why.  See Amended Petition at 2.

> **5.** **The First Evidentiary Hearing.**

The Court holds two hearings on the Petition.  See Clerk's Minutes Hearing I at 1, Clerk's Minutes Hearing II at 1, Draft Hearing Transcript at 1, taken April 28, 2025 (Court)("Hearing I

Tr.");[1] Draft Hearing Transcript at 1, taken May 9, 2025 (Court)("Hearing II Tr.").  At the beginning of the first evidentiary hearing, Diaz argues that the late disclosure of evidence hinders his preparation for the revocation hearing, and violates Diaz' rights to due process, right to competent counsel, and right to have a fair hearing.  See Hearing I Tr. at 5:17-7:6 (Snyder).  The United States discloses discovery, including police reports and dashcam videos, on Friday, April 25, 2025, and Diaz says that he has not been able to review all of it.  See Hearing I Tr. at 6:16-23 (Snyder).  Diaz asserts his right to review discovery, investigate, and prepare mitigation evidence, and requests that the Court dismiss the new Grade B violation and proceed only on the original Grace C violation.  See Hearing I Tr. at 7:3-12 (Snyder).

The United States attributes the delays in gathering discovery to the difficulty coordinating with Farmington police officers and not having an assisting federal agent.  See Hearing I Tr. at 8:1-23 (Roybal).  The United States learns of Diaz' arrest from the USPO at the end of February, 2025.  See Hearing I Tr. at 7:16-23 (Roybal).  The United States asserts that, because of technical issues, the body and dashcam footage only becomes available on April 25, 2025.  See Hearing I Tr. at 10:1-25 (Roybal).  The United States denies intent to withhold evidence and argues that no formal discovery violation occurs.  See Hearing I Tr. at 9:20-10:25 (Roybal).  The United States proposes to proceed with the hearing, because of the effort put into bringing two witnesses from the Farmington Police Department.  See Hearing I Tr. at 10:8-13 (Roybal)(explaining that the witnesses left at 4 a.m. in the morning to make it to the hearing on time).  The United States suggests a continuance of the hearing if Diaz wants one by the end of the day.  See Hearing I Tr. at 10:14-17 (Roybal).

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Diaz makes his final contentions that the lack of opportunity to review discovery affects Diaz's rights to a fair hearing and due process, and that Diaz' counsel needs to review discovery prior to the hearing to develop a plan to present mitigation evidence and cross-examine the United States' witnesses, and present other evidence. See Hearing I Tr. at 12:17-25 (Snyder). The Court proceeds with taking the United States' scheduled witness testimony, emphasizing that cross-examination and additional testimony can occur on a second day of hearings if necessary. See Hearing I Tr. at 15:8-20 (Court).

### a.    Taraden Mitchell's Testimony.

The United States calls as a witness Farmington Police Department Officer Taraden Mitchell. See Hearing I Tr. at 18-20 (Mitchell). Mitchell testifies that she responds to a "shots heard" call on November 28, 2024, in Farmington. Hearing I Tr. at 18:4 (Mitchell). The call describes a white Hyundai Sonata at the scene, which Mitchell observes -- with heavily tinted windows -- parked nearby. See Hearing I Tr. at 18:16-19:10 (Mitchell). She runs the plate and identifies the car as stolen. See Hearing I Tr. at 19:20-23 (Mitchell). She sees a man walking away from the vehicle, and when she approaches the vehicle, she sees two people sleeping inside: a man in the driver's seat and a woman in the passenger seat. See Hearing I Tr. at 22:18-23:3 (Mitchell). The man in the driver's seat is Diaz. See Hearing I Tr. at 24:8-18 (Mitchell)(identifying Diaz as the defendant in the courtroom at the hearing).

Mitchell testifies that Diaz provides a false name, "Richard Ricardo Eduardo Gonzales," and a birthdate. See Hearing I Tr. at 25:7-9 (Mitchell). Mitchell testifies that Diaz states that he does not have identification and denies knowing his Social Security number. See Hearing I Tr. at 25:10-24 (Mitchell). Mitchell testifies that, when she runs the birthdate through dispatch, no local identification results consistent with the name. See Hearing I Tr. at 26:21-24 (Mitchell). Mitchell also testifies that Diaz initially speaks English fluently but later pretends not to understand English.

See Hearing I Tr. at 26:4-9 (Mitchell).  Mitchell testifies that she notices Diaz' tattoos with the name "Diaz" and the next day, sees Diaz' name on the San Juan County arrest page.  See Hearing I Tr. at 27:4-17 (Mitchell).  Diaz does not conduct a cross-examination of Mitchell because of the "outstanding objection related to the procedure from before."  Hearing I Tr. at 27:24-25 (Snyder).

       **b.**      **Miles Mead's Testimony.**

The United States next calls Farmington Police Officer Miles Mead to corroborate Mitchell's testimony.  See Hearing I Tr. at 30 (Mead).  Officer Mead arrives on the scene after Mitchell tells Mead that she located a vehicle with a potentially stolen license plate.  See Hearing I Tr. at 30:20-24 (Mead).  Mitchell talks to Diaz, and Diaz gives a similar false name, Ricardo Gonzales.  See Hearing I Tr. at 33:21-25 (Mead).  Mitchell also testifies that Diaz states that he does not have identification, has no social security because he is from Mexico, and has not been in Farmington very long.  See Hearing I Tr. at 34:1-6 (Mead).  Mitchell also testifies that Diaz initially speaks in English, but then "started trying to act like he didn't know English" and shifts to Spanish.  Hearing I Tr. at 34:10-11 (Mead).  Diaz does not conduct a cross-examination on the "same basis as the previous officer."  See Hearing I Tr. at 35:13-14 (Snyder).  The Court continues the hearing until May 9, 2025, to hear potential cross-examination and arguments.  See Hearing I Tr. at 37:3-38:10 (Snyder, Roybal, Court).

       **6.**      **The Second Hearing.**

The Court resumes the hearing on May 9, 2025.  See Hearing II Clerk's Minutes at 1.  The Court starts by noting that Diaz' counsel sent a note earlier that morning to the Court indicating that Diaz is not cross-examining Mitchell or Mead.  See Hearing II Tr. at 2:17-20 (Court).  The Court asks both parties if they have further witnesses to present, and both parties say they do not.  See Hearing II Tr. at 2:21-3:4 (Court, Roybal, Snyder).  The Court takes judicial notice of several documents upon Diaz's request: (i) the PSR (admitted at Hearing II on May 9, 2025); (ii) the

USPO's Petition for Revocation of Supervised Release, filed December 29, 2023 (Doc. 50), and an email indicating when Diaz was arrested (admitted collectively at Hearing II on May 9, 2025, as Exhibit A); (iii) the Arrest Warrant (admitted at Hearing II on May 9, 2025, as Exhibit B), filed January 4, 2024 (Doc. 54); (iv) New Mexico Uniform Jury Instruction 14-1652, which describes the elements for possession of a stolen vehicle (admitted at Hearing II on May 9, 2025, as Exhibit C); and (v) the Tenth Circuit case United States v. Williamson, 703 Fed. App'x. 674, 676 (10th Cir. 2017), involving possession of a stolen vehicle under New Mexico law (admitted at Hearing II on May 9, 2025, as Exhibit D). See Hearing II Tr. at 4:7-22 (Court, Snyder). The parties present their arguments whether the United States shows, by a preponderance of evidence, that Diaz commits the alleged charges in the Amended Petition. See Hearing II Tr. at 1:1-21:25 (Roybal, Snyder, Court). For the misdemeanor charge of concealing identity, the United States explains that the evidence that Diaz gives an alias name, says he does not have identification or a social security number, and gives a false birthdate to the police officers shows that "we certainly have met the preponderance for concealing identity." See Hearing II Tr. at 7:1-2 (Roybal). Diaz does not contest that he commits the misdemeanor of concealing identity when he gives the police officers a false name and does not provide other identifiers such as a driver's license or social security number. See Hearing II Tr. at 18:4 (Snyder). Diaz, however, contests that he does not commit the felony of possessing a stolen motor vehicle, which would increase his violation from a Grade C violation for a misdemeanor, to a Grade B violation for a felony. See Hearing II Tr. at 17:11-12 (Snyder); id. at 18:21-24 (Probation). With Diaz' criminal history category of VI, Diaz has a Guidelines sentencing range of 21 to 27 months for a Grade B violation, which is higher than Diaz' Guidelines sentencing range of 8 to 14 months for a Grade C violation. See Hearing II Tr. at 20:1-6 (Court, Probation); Amended Petition at 2; Violation Report at 2. Diaz argues that the evidence of concealing identity -- that he gives an alias, says he does not have identification or a

social security number, and gives a false birthdate -- does not support that Diaz knows or should know that the vehicle is stolen.  See Hearing II Tr. at 12:10-17:4 (Snyder).  Diaz argues that no testimony concerns Diaz' knowledge of the vehicle's status, history, operation, condition, car details such as the doors, windows, and locks, the license plate, or whether he knew the vehicle was stolen.  See Hearing II Tr. at 14:3-15:13(Snyder).  The United States argues that, because the evidence clearly shows that Diaz conceals his identity and the vehicle is stolen, the Court "can infer that he knew he was engaged in unlawful behavior" of knowing that he possessed a stolen vehicle.  Hearing II Tr. at 9:12-13 (Roybal).

The Court states that it cannot sentence Diaz immediately at the hearing, because the issue whether Diaz commits the felony of possessing a stolen vehicle affects the Guidelines sentencing range.  See Hearing II Tr. at 18:25-19:6 (Court).  Diaz states that he would accept, today, a 14-month sentence which reflects the high end of Guidelines range for a Grade C violation.  See Hearing II Tr. at 19:18-24 (Snyder).  The United States responds that if Court finds that Diaz is subject instead to a Grade B violation, then it would recommend a higher end Guidelines sentence, based on Diaz's history and because "he has just repeatedly chosen to not comply with the Court on supervision, especially if there is not going to be another term to follow."  Hearing II Tr. at 20:11-16 (Roybal).  The Court states that it still cannot sentence Diaz immediately, because the United States has the right to pursue a higher sentence if Diaz is subject to a higher range.  See Hearing II Tr. at 20:23-21:6 (Roybal, Court).  The Court states it will write a separate memorandum opinion and order deciding the issue.  See Hearing II Tr. at 21:1-6 (Court).

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges advisory.  See United States v. Booker, 543 U.S.

at 261.  In excising the two sections, the Supreme Court leaves the remainder of the Sentencing

Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth

numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they

have in the past, in determining whether a sentence is unreasonable."  United States v. Booker,

543 U.S. at 261.  Accordingly, even though the Guidelines are not mandatory, courts must consult

them for advice in arriving at an appropriate sentence.  See Peugh v. United States, 569 U.S. 530,

541-42 (2013).  The Guidelines provide a starting point for the court's determination of a proper

sentence.  See Gall v. United States, 552 U.S. 38, 50 n.6 (2007)("[D]istrict courts must begin their

analysis with the Guidelines and remain cognizant of them throughout the sentencing process.");

Peugh v. United States, 569 U.S. at 541 ("The post-Booker federal sentencing scheme aims to

achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that

they remain a meaningful benchmark through the process of appellate review.").

Congress has directed sentencing courts to "impose a sentence sufficient, but not greater

than necessary, to comply with" the four statutorily defined purposes enumerated in

18 U.S.C. § 3553(a)(2):

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to further consider: (i) "the nature and circumstances of the offense," as well as the defendant's "history and characteristics"; (ii) the available sentences; (iii) the Guidelines; (iv) any pertinent Sentencing Commission policy statements in effect on the date of sentencing; (v) the policy favoring uniformity in sentences for defendants who commit similar crimes; and (vi) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).

The United States Court of Appeals for the Tenth Circuit holds that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ." United States v. Cage, 451 F.3d at 593.  A court's careful consideration of the Guidelines is proper in light of the fact that "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." Rita v. United States, 551 U.S. 338, 349 (2007).

"[A] sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor

- 12 -

of the advisory[2] Guidelines sentence.  See Kimbrough v. United States, 552 U.S. at 90-91; Gall v.

---

[2]Attorneys and courts often say that the Guidelines are advisory, but it is more accurate to say that the resulting Guidelines ranges are advisory.  See Gall v. United States, 552 U.S. 38, 46 (2007)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . .");  United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.");  United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory.").  The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated to apply, however, a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

        The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

        The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances."  Irizarry v. United States, 553 U.S. 708, 710-16 (2008).    A district court that attempts to vary from

- 13 -

United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M. February 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

## LAW REGARDING SUPERVISED RELEASE

A district court's decision-making with regard to violations of supervised release conditions comes in two phases. First, at sentencing, the court must decide whether to impose a term of supervised release and, if so, how long a term to impose and what conditions to associate with it. Second, while the defendant is on supervised release, if the United States accuses the

---

U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

defendant of violating a condition of supervised release, the Court must determine whether the defendant has violated the conditions, whether to revoke supervised release, and, if the court revokes supervised release, what disposition to impose for the violation.

1.    **Imposition of Supervised Release.**

A court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may [and sometimes must] include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). As part of a defendant's supervised release, he is legally bound to abide by certain conditions of his release. See 18 U.S.C. § 3583(d). Section 3583 of Title 18 of the United States Code sets forth some of the standard and discretionary conditions that courts shall and may impose as part of supervised release:

> **Conditions of supervised release.** -- The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4). The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question

- 15 -

the results of the test.  A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy.  The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test.  The court may order, as a further condition of supervised release, to the extent that such condition --

    (1)    is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

    (2)    involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

    (3)    is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available.  If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.  The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

18 U.S.C. § 3583(d).

      Thus, § 3583 specifies standard and discretionary conditions of supervised release, while elsewhere Congress provides for other conduct which, if a defendant commits on supervised release, can result in a revocation of supervised release.  Among others, § 3583 provides that the defendant not commit another federal, State, or local crime during the term of supervision, that the

defendant not possess any controlled substances, and that the defendant cooperate in the collection of a DNA sample.  See 18 U.S.C. § 3583(d).  Further, § 3583 permits a court to craft special conditions of supervised release that it deems appropriate.  See 18 U.S.C. § 3583(d).  Among those conditions not listed in § 3583 is that supervised release may be revoked if the defendant fails to pay a fine or restitution that the court has imposed.  See 18 U.S.C. § 3613A ("Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release . . . .").  In "determining whether to include a term of supervised release, and if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release," the court "shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."  18 U.S.C. § 3583(c).[3]

     **2.**    **Revocation of Supervised Release.**

Subsection (e)(3) of § 3583 sets forth the process for revoking supervised release:

    **(e)**    **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --

. . . .

    (3)    revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that

---

[3]The Court will discuss these eight specific § 3553(a) factors in the next two sections, which focus on a district court's re-imprisonment of a defendant following revocation of a term of supervised release under § 3583(e).  A district court must consider these same eight factors in both contexts.  It should be noted that 18 U.S.C. § 3583(c) omits § 3553(a)(2)(A), which requires a district court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  Judge Posner of the Seventh Circuit observes regarding this omission: "From the omission of subsection 3553(a)(2)(A), the court in United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012), inferred 'that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment.'"  United States v. Thompson, 2015 WL 151609, at * 2 (7th Cir. Jan. 13, 2015)(Posner, J.).  The Court agrees with that general observation and goal.

resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than three years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e).  Further, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C. § 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that, even before the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorizes district courts to order terms of supervised release following reimprisonment).  The court must find all violations of supervised release by a preponderance of the evidence, regardless whether the violative conduct itself constitutes criminal conduct.  See 18 U.S.C. § 3583(e).  This standard is different from the ones that apply to a defendant's violation of pretrial release conditions -- mere probable cause for criminal violations, and the heightened clear-and-convincing standard for noncriminal violations.  See 18 U.S.C. § 3148(b)(1).

A defendant violates a supervised release condition when he or she violates the supervised release condition's express terms.  For example, in United States v. Roy, 438 F.3d 140 (1st Cir. 2006), the defendant has two express supervised release conditions: (i) that he respond to the probation officer truthfully; and (ii) that he participate in a mental health treatment program.  See United States v. Roy, 438 F.3d at 143.  The First Circuit concludes that the defendant violates both express conditions, because he lies to his probation officer about having a relationship with a

- 18 -

woman, and because he is terminated from a treatment program for having unapproved contact with children and being dishonest. See United States v. Roy, 438 F.3d at 143. At least one Court of Appeals concludes that, when a defendant does not participate in activities which the supervised release condition requires, the defendant violates supervised release conditions and faces revocation. In United States v. Musso, 643 F.3d 566, 570 (7th Cir. 2011), the defendant's sex offender treatment contract requires the defendant, who is convicted of possessing child pornography, to "participate in group discussions, treatment activities, and written assignments," and states that "simply showing up for sessions is not enough to be considered cooperative with treatment." 643 F.3d at 570. The United States Court of Appeals for the Seventh Circuit affirms the district judge's conclusion that, because the defendant talks about superficial personal topics instead of the core issues that bring him to treatment, frequently denies, minimizes, or uses a victim stance to avoid accountability for his actions, and does not submit his homework assignments, the defendant does not "participate meaningfully" in sex offender treatment. 643 F.3d at 570. Furthermore, the defendant violates additional contract terms, including possessing prohibited sexual materials and engaging in prohibited contact with a minor. See 643 F.3d at 570-71. According to the Seventh Circuit, the district court, therefore, correctly revokes the defendant's supervised release and imposes new special conditions of supervised release. See 643 F.3d at 570. As long as the defendant follows the express terms of the supervised release conditions, the court does not revoke supervised release, even if the defendant harbors negative feelings towards the conditions or does not make progress. See USA v. Hronich, No. CR 11-1789 JB, 2025 WL 1330467, at *1 (D.N.M. May 7, 2025)(Browning, J.)(denying petition to revoke supervised release because the defendant attends and participates in sex offender treatment to the extent required by the supervised release special condition's language).

3.        **Sentencing Following the Revocation of Supervised Release**.

Consistent with § 3583(e)(2), the Tenth Circuit explains: "When a convicted defendant violates a condition of supervised release, the sentencing judge may revoke the term of supervised release and impose prison time."  United States v. Patton, 506 F. App'x 729, 731 (10th Cir. 2012)(Brorby, J.)(quoting United States v. Vigil, 696 F.3d 997, 1002 (10th Cir. 2012)(O'Brien, J.)(citing 18 U.S.C. § 3584(e))).[4]  Considering the sentence, "[t]he judge must consider [certain] factors in 18 U.S.C. § 3553(a) and the policy statements in Chapter 7 of the Sentencing Guidelines."  United States v. Patton, 506 F. App'x at 731 (brackets in original).  See 18 U.S.C. § 3583(e).  The relevant portion of 18 U.S.C. § 3583(e) concerning revocation of supervised release provides that "[t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release."  18 U.S.C. § 3583(e).  The relevant § 3553(a) factors are as follows:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed --

. . .

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

---

[4]As described in the preceding section, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C. § 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that, even before the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorizes district courts to order terms of supervised release following reimprisonment).  When a defendant violates conditions of his supervised release, therefore, he can be sentenced to imprisonment followed by further supervised release.

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . .

(4)     the kinds of sentence and the sentencing range established for --

. . . .

(B)     in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5)     any pertinent policy statement --

(A)     issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B)     that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced; or

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  See United States v. Patton, 506 F. App'x at 731 n.2 (explaining that 18 U.S.C. § 3583(e) lists the § 3553(a) factors to be considered).[5]  The Tenth Circuit holds that at

---

[5]"Section 3583(e) does not list Section 3553(a)(2)(A) among the factors district courts should consider in modifying or revoking supervised release."  United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)(Baldock, J.).  The omitted section, § 3553(a)(2)(A), provides that, in determining the sentence to be imposed, the district court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).

 

 

The Supreme Court has not addressed whether a district court's consideration of a § 3553(a)(2)(A) factor during revocation sentencing is error.  See United States v. Miller, 608 Fed. App'x 707, 709 (10th Cir. 2015)(Baldock, J.).  The Courts of Appeals are split on the question. See United States v. Chatburn, 505 Fed. App'x 713, 717 (10th Cir. 2012)(Matheson, Jr., J.).  The United States Courts of Appeals for the First, Second, Third, Sixth, and Seventh Circuits conclude that it is not error to consider § 3553(a)(2)(A) factors during revocation sentencing.  See e.g., United States v. Clay, 752 F.3d 1106, 1108-09 (7th Cir. 2014)(Flaum, J.); United States v. Vargas-Davila, 649 F.3d 129, 131-32 (1st Cir. 2011)(Selya, J.); United States v. Young, 634 F.3d 233, 239 (3d Cir. 2011)(Vanaskie, J.); United States v. Lewis, 498 F.3d 393, 399-400 (6th Cir. 2007)(McKeague, J.); United States v. Williams, 443 F.3d 35, 47-48 (2d Cir. 2006)(Kearse, J.).  The United States Court of Appeals for the Fifth, Ninth, and Tenth Circuits, by contrast, conclude that it is error.  See United States v. Miller, 634 F.3d 841, 844 (5th Cir. 2011)(Garza, J.); United States v. Miqbel, 444 F.3d 1173, 1182 (9th Cir. 2006)(Reinhardt, J.); United States v. Booker, 63 F.4th 1254, 1259-60 (10th Cir. 2023).  The United States Courts of Appeals for the Fourth Circuit initially joins the Fifth and Ninth Circuits, holding that, "[a]ccording to § 3553(a)(2)(A), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence 'reflect[s] the seriousness of the offense, . . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense,'"  United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006)(Shedd, J.).  But seven years later, the Fourth Circuit limits United States v. Crudup's holding in United States v. Webb, 738 F.3d 638 (4th Cir. 2013)(Floyd, J.):

> A district court's meaningful consideration of the enumerated § 3553(a) factors when imposing a revocation sentence typically will include analysis that furthers the purposes of post-revocation incarceration.  Given that the § 3553(a)(2)(A) factors are closely related to the factors district courts are instructed to consider under § 3583(e), we fail to see how a district court's reference to the § 3553(a)(2)(A) sentencing considerations, without more, would automatically render a sentence unreasonable.  Accordingly, although a district court may not impose a revocation sentence based predominantly on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment, we conclude that mere reference to such considerations does not render a revocation sentence procedurally unreasonable when those factors are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors.

United States v. Webb, 738 F.3d at 641-42.  The Ninth Circuit, likewise, later rules that its holding in United States v. Miqbel, 444 F.3d at 1182, does not make reliance upon a § 3553(a)(2)(A) factor improper per se, explaining:

> [W]e did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation.  The seriousness of the offense underlying the revocation, though not a focal point of the inquiry, may be considered to a lesser degree as part of the criminal history of the violator.

. . .

          To ignore the new violation underlying the revocation entirely would be to ignore a key predictor of a violator's potential for reintroduction into society without relapse.  See, e.g., United States v. Tadeo, 222 F.3d 623, 626 (9th Cir. 2000) (finding no abuse of discretion where the court found that the use of narcotics in violation of supervised release created a risk that the defendant would commit serious crimes because some of his past criminal activity occurred while under the influence).  The history of the violator, when combined with the violator's most recent criminal offenses, and particularly when similar to the past transgressions, is indicative of the violator's propensity for recidivism and inability to integrate peacefully into a community.  See id.; U.S.S.G.M. Ch.7, Pt. A(4) (2006) (determining "that the purpose of . . . supervised release should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct"); see also 18 U.S.C. §§ 3553(a)(2)(B)(2003) (affording deterrence as one consideration) and 3553(a)(2)(C)(2003) (protecting the public from further crimes as another); 18 U.S.C. § 3583(e) (permitting the preceding factors for consideration in revocation sentences).  A history of, for example, drug-related offenses, combined with a drug-related offense underlying revocation, as is the case here, creates a greater likelihood that the violator will relapse into the same or similar criminal activity.  A violator who, after committing an offense and being placed on supervised release for that offense, again commits a similar offense is not only more likely to continue on that path, but also has demonstrated to the court that the violator has little respect for its command.  Because the district court's trust in the violator's ability to coexist in society peacefully has been broken to a greater degree than if the violator had committed a minor offense of a dissimilar nature, greater sanctions may be required to deter future criminal activity.  Consequently, if the nature and the severity of the underlying offense were removed from the equation altogether, the court's ability to predict the violator's potential for recidivism and to punish the violator for the violator's full breach of trust (and, ultimately, to deter the violator and to protect the public) would be impaired significantly.

United States v. Simtob, 485 F.3d 1058, 1062-63 (9th Cir. 2007)(Ezra, J.).

          Before the Tenth Circuit's decision in United States v. Booker, the Court thought that, like the Fifth and Ninth Circuits, it was not error to consider the § 3553(a)(2)(A) factors during revocation sentencing, and still thinks that is probably the better rule.  The Court must apply, however, Tenth Circuit precedent.  Now, where there is a revocation, given United States v. Booker, the Court strives not to consider respect for the law, just punishment, and the seriousness of the offense.  The Court believes the solution and best practice is to always keep in mind what Judge Posner and the Third Circuit emphasize -- "that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." United States v. Thompson, 2015 WL 151609, at *2 (quoting United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012)(Fuentes, J.)).  It is mindful that all it does should help the defendant ease back into society after a sometimes lengthy prison sentence, and it tries not to punish the defendant,

revocation sentencing, consideration of any other factors beyond § 3553(a), as well as any § 3553(a) factors not explicitly enumerated in § 3583(e) -- such as the need for retribution -- is improper.  See United States v. Booker, 63 F.4th 1254, 1259-60 (10th Cir. 2023).  In United States v. Booker, the Tenth Circuit applies to revocation sentencings its prior holding from United States v. Smart, 518 F.3d 800, 803-04 (10th Cir. 2008), that any consideration of sentencing factors not enumerated in § 3553(a) at sentencing is in procedural error.  See United States v. Booker, 63 F.4th at 1259.  The Tenth Circuit explains that its holding in Smart also applies to revocation sentencings "because § 3583(e) also requires courts to consider certain § 3553(a) factors when sentencing after a supervised release violation."  United States v. Booker, 63 F.4th at 1259 (citing United States v. McBride, 633 F.3d 1229, 1231 (10th Cir. 2011)).  Then, the Tenth Circuit explains: "Because we read § 3583(e) to set forth those sentencing factors that courts must consider, the subsection 'implicitly forbids consideration' of any other § 3553(a) factors when modifying or revoking a term of supervised release."  United States v. Booker, 63 F.4th at 1260 (quoting Smart, 518 F.3d at 803-04).  The Tenth Circuit concludes that "the omission of § 3553(a)(2)(A) from the sentencing factors enumerated in § 3583(e) precludes a court from considering the need for retribution when modifying or revoking a term of supervised release."  United States v. Booker, 63 F.4th at 1260.  The district court, in United States v. Booker, thus, errs, because it "directly quoted" from

---

although sometimes punishment -- incarceration -- is needed and expressly authorized to get the defendant to do what the Court and the USPO tell him or her to do.

    The Court makes one other observation.  When Congress and the Court says the word "offense" at a violation hearing, the question is whether it is referring to the underlying offense or to the violation.  The Court can consider both, but again, in meeting the goals of supervised release, the emphasis should be on the violation, not the underlying offense.  For example, when it considers the "nature and circumstances of the offense," it may consider how the defendant arrived before the Court, but its focus and emphasis in coming up with a disposition should be on the nature and circumstances of the new violation.  If the Court is going to consider the seriousness of the offense, the seriousness of the underlying offense is largely irrelevant, unless the violation is just the same thing as the underlying offense.  In any case, the focus and emphasis, if seriousness is considered at all, should be on the seriousness of the new violation.

§ 3553(a)(2)(A) when explaining the reasons for Booker's sentence, and § 3553(a)(2)(A) is a factor the district court cannot consider when modifying or revoking Booker's term of supervised release.  63 F.4th at 1262.[6]

In particular, a district court must consider the policy statements in Chapter 7 of the Sentencing Guidelines before imposing a sentence for violations of the conditions of supervised release.  See United States v. Vigil, 696 F.3d at 1002; United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004)(Ebel, J.).  The Guidelines' commentary is generally an authoritative interpretation of the rules contained therein.  See Stinson v. United States, 508 U.S. 36, 38 (1993).  "[T]he Chapter 7 provisions dealing with violations of supervised release are not mandatory sentencing guidelines; rather, they merely constitute advisory 'policy' statements."  United States v. Contreras-Martinez, 409 F.3d 1236, 1240 (quoting United States v. Tsosie, 376 F.3d 1210, 1218 (10th Cir. 2004).  See United States v. Lee, 957 F.2d 770, 773-74 (10th Cir. 1992)("[T]he policy statements regarding revocation of supervised release contained in Chapter 7 of the U.S.S.G. are advisory rather than mandatory in nature," and "they must be considered by the trial court in its deliberations concerning punishment for violation of conditions of supervised release.").

---

[6]The Court notes that, in United States v. Booker, the Tenth Circuit concludes that the district court's error in considering § 3553(a)(2)(A) does not affect the defendant's substantial rights.  See United States v. Booker, 63 F.4th at 1262.  The Tenth Circuit explains:

> We concluded that a single reference to punishment did not affect the defendant's substantial rights. [United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)]. The court did not rely on the need for punishment in setting forth his initial reasons for the new sentence based upon violation of the terms of supervised release, and only raised it after defense counsel objected to his client receiving a high-end sentence.

United States v. Booker, 63 F.4th at 1263.

"All discussions of applicable sentences before a district court following the revocation of supervised release 'should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum.'" United States v. Burdex, 100 F.3d 882, 885 (10th Cir. 1996)(Henry, J.)(quoting United States v. Hofierka, 83 F.3d 357, 362 (11th Cir. 1996)). While district courts are required to consider Chapter 7's policy statements in imposing sentences after revocation of supervised release, "[m]agic words, however, are not required to demonstrate fulfillment of this requirement." United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005)(McKay, J.). "Rather, it is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence." United States v. Penn, 601 F.3d at 1011.

## LAW REGARDING SUPERVISED RELEASE REVOCATION AND REVOCATION HEARINGS

Subsection (e)(3) of § 3583 permits courts to revoke supervised release on the conclusion, by a preponderance of the evidence, that the defendant violated a condition of probation. See 18 U.S.C. § 3583(e). Section 3583(e)(3) sets forth the process for revoking supervised release:

> **(e)    Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --
>
> . . . .
>
> (3)    revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than three years in prison if such offense is a class B felony, more than 2

> years in prison if such offense is a class C or D felony, or
> more than one year in any other case . . . .

18 U.S.C. § 3583(e)(bold in original).  "Preponderance of the evidence" is "evidence sufficient to

persuade you that a fact is more likely present than not present."  10th Cir. Crim. Pattern Jury

Instructions No. 1.05.1.  It is:

> The greater weight of the evidence, not necessarily established by the
> greater number of witnesses testifying to a fact but by evidence that has the most
> convincing force; superior evidentiary weight that, though not sufficient to free the
> mind wholly from all reasonable doubt, is still sufficient to incline a fair and
> impartial mind to one side of the issue rather than the other.

"Preponderance of the Evidence," Black's Law Dictionary (11th ed. 2019).

Where, as here, revocation of supervised release is contested, courts must hold a revocation

hearing.  See Fed. R. Crim. P. 32.1(b)(2).  Rule 32.1 of the Federal Rules of Criminal Procedure

governs revocation hearings.  See Fed. R. Crim. P. 32.1.  Rule 32.1 provides in relevant part:

> (2)     Revocation Hearing. Unless waived by the person, the court must hold the
> revocation hearing within a reasonable time in the district having
> jurisdiction. The person is entitled to:
>
> > (A)     written notice of the alleged violation;
> >
> > (B)     disclosure of the evidence against the person;
> >
> > (C)     an opportunity to appear, present evidence, and question any
> > adverse witness unless the court determines that the interest of
> > justice does not require the witness to appear;
> >
> > (D)     notice of the person's right to retain counsel or to request that
> > counsel be appointed if the person cannot obtain counsel; and
> >
> > (E)     an opportunity to make a statement and present any information in
> > mitigation . . . .

Fed. R. Crim. P. 32.1(b).

Although rule 32.1(b)(2) provides for a revocation hearing, the hearing is "not a formal

trial."  Comment to Rule 32.1(a)(2).  Instead, revocation hearings are to be more flexible and

inclusive than criminal trials.  See Morrissey v. Brewer, 408 U.S. 471, 489 (1972).[7]  The parties

may call witnesses and present evidence, but the process "should be flexible enough to consider

evidence including letters, affidavits, and other material that would not be admissible in an

adversary criminal trial."  Morrissey v. Brewer, 408 U.S. at 489 (emphasis added).  To that end,

the Federal Rules of Evidence do not apply in revocation hearings.  See Fed. R. Evid. 1101(d)(3)

("These rules -- except for those on privilege -- do not apply to . . . miscellaneous proceedings

such as . . . granting or revoking probation or supervised release . . . ."); United States v. Diaz, 986

F.3d 202, 209 (2d Cir. 2021).

Also in service of flexibility and inclusivity, defendants have a lesser right to confrontation

in revocation hearings.  See Jones, 818 F.3d at 1098.  "The Sixth Amendment [to the Constitution

of the United States of America] is a trial right" and does not apply to revocation hearings.  United

States v. Hernandez, 778 F. Supp. 2d 1211, 1225 (D.N.M. 2011)(Browning, J.).  Rule 32.1 of the

Federal Rules of Criminal Procedure, however, gives the defendant at the revocation hearing "an

opportunity to appear, present evidence, and question any adverse witness unless the court

determines that the interest of justice does not require the witness to appear."  Fed. R. Crim. P.

32.1(b)(2)(c).  Instead of running through a standard confrontation analysis like the one the

Supreme Court of the United States provides in Crawford v. Washington, 541 U.S. 36

(2004)("Crawford"), courts presiding over revocation hearings engage in a balancing test.  See

Jones, 818 F.3d at 1099-100.  When the United States relies on an out-of-court statement by a non-

---

[7]Rule 32.1 was adopted in 1979.  See Advisory Committee Notes on Fed. R. Crim. P. 32.1.
It replaced the former "revocation of parole" system with a new "revocation of supervised release"
system.  See Advisory Committee Notes on Fed. R. Crim. P. 32.1.  The United States Supreme
Court decided Morrissey v. Brewer in 1972, prior to the adoption of rule 32.1.  Accordingly, the
Supreme Court's analysis concerns revocation of parole, not revocation of supervised release.
Nevertheless, the Tenth Circuit has interpreted Morrissey v. Brewer to apply to revocation of
supervised release.  See, Jones, 818 F.3d at 1098-99 (discussing Morrissey v. Brewer as part of
the history and development of rule 32.1).

testifying declarant in a revocation hearing, the court "must determine whether the 'interest of justice does not require the witness to appear' by balancing (1) 'the person's interest in the constitutionally guaranteed right to confrontation' against (2) 'the government's good cause for denying it.'"   Jones, 818 F.3d at 1099-100 (quoting Advisory Committee Notes to the 2002 Amendment to Fed. R. Crim. P. 32.1).   See also Rule 32.1 Advisory Committee's Note to the 2012 Amendment (instructing courts to apply a balancing test that weighs "the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it."); United States v. Hernandez, 428 F. Supp. 3d at 788 ("When applying the balancing test, the Court must weigh the defendant's interest in cross-examining and confronting [a] witness with the government's good cause for not presenting the witness" (citing Jones, 818 F.3d at 1098)).   The testimony's "reliability is a very important factor in determining the strength of a releasee's confrontation right.'"   Jones, 818 F.3d at 1100 (quoting Curtis v. Chester, 626 F.3d 540, 546 (10th Cir. 2010)(emphasis omitted in Jones, but in Curtis v. Chester)).   The Tenth Circuit has adopted this balancing test "when determining a releasee's confrontation rights at a revocation hearing." Jones, 818 F.3d at 1099.   See e.g., United States v. Hykes, 653 F. Supp. 3d 913, 917 (D.N.M. 2022)(Browning, J.)(establishing findings of fact in a revocation of supervised release memorandum opinion and order based on evidence that survives the balancing test that the Tenth Circuit adopts in United States v. Jones, 818 F.3d at 1098); United States v. Calvert-Cata, 2022 U.S. Dist. LEXIS 194756, at *30-31 (D.N.M. October 26, 2022)(Browning, J.)(determining in the alternative that even if it must apply the United States v. Jones, 818 F.3d at 1098 balancing test to the victim's out-of-court statements, the statements are admissible because the United States has good cause not to call on the witness to testify at the revocation hearing).

Although rule 32.1 of the Federal Rules of Criminal Procedure and the Jones balancing test are geared toward decreasing procedural protections for defendants in revocation hearings and

increasing the universe of evidence courts can consider in those hearings, in practice, rule 32.1 and Jones may limit evidence unnecessarily and unwisely. In some instances, courts presiding over revocation hearings may be compelled to disregard out-of-court statements even though those same out-of-court statements would be admissible under the Federal Rules of Evidence and Crawford if they were offered at trial, regardless of whether the declarant is available to testify at the trial.[8] Those instances are troubling for two reasons. First, defendants in those cases are provided with a greater right to confrontation in the revocation context than they are in the trial context. It is difficult -- if not impossible -- to square that outcome with the Tenth Circuit's guidance that defendants are supposed to have a more limited right to confrontation in the revocation setting than they do in the trial setting. See Jones, 818 F.3d at 1098. Second, courts in those cases are forced to rely on smaller universes of evidence than they would be able to in the trial setting. Again, it is difficult -- if not impossible -- to reconcile that result with the Supreme Court's guidance in Morrissey v. Brewer that courts presiding over revocation hearings should be able to consider "material that would not be admissible in an adversary criminal trial." 408 U.S. at 489.

---

[8]The Court confronts similar issue in United States v. Hernandez, 428 F. Supp. 3d 775 (D.N.M. 2019)(Browning, J.). There, an officer responds to a domestic disturbance in Rio Rancho, New Mexico. See 428 F. Supp. 3d at 782. When the officer arrives at the scene, the victim "appeared distressed," and tells the officer that the defendant assaulted her and attempted to set fire to a kitchen, among other things. 428 F. Supp. 3d at 782. The defendant was on supervised release at the time, and the United States subsequently petitions to revoke his supervised release. See 428 F. Supp. 3d at 780. At the hearing, the United States does not call the victim, yet it relies on her statements to the officer on the scene. See 428 F. Supp. 3d at 781. The Court applies the Jones balancing test and determines that it cannot consider the victim's out-of-court statements to the officer. See 428 F. Supp. 3d at 788. Those out-of-court statements, however, are admissible hearsay in a trial setting as either a present sense impression or excited utterance, see Fed. R. Evid. 803(1), (2).

The Honorable Andrew S. Oldham, United States Circuit Judge for the United States Court of Appeals for the Fifth Circuit, documents this paradox in his concurring opinion in United States v. Alvear, 959 F.3d 185, 191 (5th Cir. 2020)(Oldham, J., concurring).  In his concurrence, Judge Oldham discusses "three oddities" in rule 32.1 caselaw.  United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring).[9]  First, he notes that "it's unclear what if anything the Due Process Clause adds to the protections of Rule 32.1(b)(2)(C)."  United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring).  Second, he observes that, "instead of applying Rule 32.1(b)(2)(C), many of our decisions in this area contain nary a citation to it."  United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring).  Finally, he describes, "oddest of all, sometimes confrontation rights in a revocation hearing can be broader than the confrontation right at trial."  United States v. Alvear, 959 F.3d 193 (Oldham, J., concurring)(emphasis in original).

> The Supreme Court has told us that protections in a revocation hearing are (at most) the same as those at trial.  See United States v. Haymond, -- U.S. --, 139 S. Ct. 2369, 2378-79 . . . (2019) (plurality opinion); id. at 2385-86 (Breyer, J., concurring in the judgment).  That result creates its own difficulties. See id. at 2390-91 (Alito, J., dissenting).  But it's an altogether different problem to make the constitutional protections in the revocation hearing broader than at trial.  After all, one premise of our system is that post-conviction rights are generally narrower because "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears."  Herrera v. Collins, 506 U.S. 390, 399 . . . (1993).  But when we ask different questions under the Confrontation Clause at trial (is the statement "testimonial"?) and under the Due Process Clause at revocation (is there "good cause" to admit the statement?), we can get incongruous answers.

---

[9]The Fifth Circuit does not use the Jones test.  It uses, however, a balancing test analogous to Jones test, as does every other circuit that has handled a rule 32.1 issue.  See United States v. Taveras, 380 F.3d 532, 536 (1st Cir. 2004); United States v. Chin, 224 F.3d 121, 124 (2d Cir. 2000); United States v. Lloyd, 566 F.3d 341, 344 (3d Cir. 2009); United States v. Doswell, 670 F.3d 526, 530 (4th Cir. 2012); Barnes v. Johnson, 184 F.3d 451, 454 (5th Cir. 1999); United States v. Jackson, 422 Fed. App'x 408, 410-11 (6th Cir. 2011)(unpublished); United States v. Jordan, 742 F.3d 276, 279 (7th Cir. 2014); United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986); United States v. Comito, 177 F.3d 1166, 1170 (9th Cir. 1999); United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994); United States v. Stanfield, 360 F.3d 1346, 1360 (D.C. Cir. 2004).

Consider an example. A boyfriend violently attacks his girlfriend who then immediately calls 911. The Government wants to use her statements to the 911 operator against the boyfriend. At trial, the defendant has no right to prevent the introduction of these statements under the Confrontation Clause because they're not "testimonial." [Ohio v. ]Clark, [576 U.S. 237 (2015)] (citing Davis v. Washington, 547 U.S. 813, 820 . . . (2006)). But this same 911 call is almost certainly hearsay. So at the boyfriend's revocation hearing, he can object to the introduction of the statements under the Due Process Clause, unless there is "good cause" to admit them. See, e.g., [United States v. ]Jimison, 825 F.3d [260,] 263 [(2016)].

The oddities don't end there. The Federal Rules of Evidence apply at trial. And they provide for the admission of all sorts of hearsay: an excited utterance, a statement made for medical treatment, a present sense impression, a business record, a statement against interest. See Fed. R. Evid. 803, 804. But the hearsay rules in the Federal Rules of Evidence do not apply in revocation hearings. Fed. R. Evid. 1101(d)(3) . . . . So if the Government wants to use these same (otherwise-admissible) hearsay statements at a revocation hearing, the court has to apply the "good cause" analysis demanded by the Due Process Clause. That's an additional hurdle that applies post-conviction that does not apply pre-conviction. How odd.

United States v. Alvear, 959 F.3d at 194 (Oldham, J., concurring).

Although 18 U.S.C. § 3583(e) establishes the maximum terms of imprisonment upon the revocation of a defendant's supervised release, the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") establish revocation imprisonment ranges based on the defendant's criminal history category and the violation grade. See U.S.S.G. § 7B1.4(a). The Guidelines establish three violation categories:

(1)    GRADE A VIOLATIONS -- conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

(2)    GRADE B VIOLATIONS -- conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

(3)    GRADE C VIOLATIONS -- conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.2(a) (capitalization in original). In determining the applicable revocation imprisonment range, the Guidelines instruct that courts should apply the criminal history category applicable at the time of the defendant's underlying sentencing. See U.S.S.G. § 7B1.4 cmt. n.1.

## ANALYSIS

The Court concludes that the United States shows, by a preponderance of evidence, that Diaz commits the misdemeanor of concealing identity. The Court, however, concludes that the United States does not show, by a preponderance of evidence, that Diaz commits the felony of possessing a stolen vehicle. Diaz, therefore, commits a Grade C violation, as opposed to a higher Grade B violation, and the Guidelines sentencing range is 8 to 14 months.

As an initial matter, Diaz does not contest that he commits the first two violations in the Petition: participating in substance treatment by leaving Icarus and not telling the USPO that he moves residency. See Hearing II Tr. at 11:9-10 (Snyder). Diaz focuses on the third violation that the Amended Petition adds: concealing identity and possessing a stolen motor vehicle. See Hearing II Tr. at 12:11-14 (Snyder). Specifically, while Diaz admits to concealing identity, he argues that he does not possess a stolen vehicle. See Hearing II Tr. at 12:10-14 (Snyder); id. at 17:4 (Snyder)(stating that there is no dispute that Diaz violates the statute for concealing identity). To possess a stolen vehicle, Diaz must know that the vehicle is stolen, and Diaz argues that his actions to conceal his identity do not go towards his knowledge whether the vehicle is stolen. See Hearing II Tr. at 13:3-8 (Snyder). This is consequential because the misdemeanor of concealing identity results in a Grade C violation with a Guidelines sentencing range of 8 to 14 months, while the felony of possessing a stolen vehicle results in a higher Grade B violation with a higher Guidelines sentencing range of 21 to 24 months.

First, the Court agrees with the parties that Diaz conceals his identity to police officers in violation of NMSA § 30-22-3. In New Mexico, the elements for concealing identity are: (i) the

defendant conceals his name or identity; (ii) the defendant intends to intimidate, hinder, or interrupt

the officer in the legal performance of his duty; and (iii) this happened in New Mexico on or about

the date alleged.  See State v. Aguilar, 2021-NMCA-018 ¶ 23, 488 P.3d 698, 704.[10]  Here, Diaz

tells the police officers an alias name: "Richard Ricardo Eduardo Gonzales," Hearing I Tr. at 25:8

(Mitchell), or Ricardo Gonzales, see Hearing I Tr. at 33:23 (Mead).  Diaz gives the police officers

a birthdate that has no database match and states that he does not have social security.  Over the

course of the police questioning, Diaz makes things increasingly difficult by pretending to speak

only Spanish despite initially answering questions in English.  See Hearing I Tr. at 26:4-9

---

[10]The Court notes that there is no New Mexico Uniform Jury Instruction on concealing identity, and both parties accept the elements set forth in State v. Aguilar, 2021-NMCA-018 ¶ 23, 488 P.3d 698, 704.  See Hearing II Tr. at 7:3-7 (Roybal); id. at 3-4 (Snyder)(conceding that the evidence supports that Diaz conceals his identity).  There, the Court of Appeals of New Mexico acknowledges that there is no Uniform Jury Instruction on concealing identity, and upholds a jury instruction with the three elements of: (i) the defendant conceals his name or identity; (ii) the defendant intends to intimidate, hinder, or interrupt the officer in the legal performance of his duty; and (iii) this happened in New Mexico on or about the date alleged.  See State v. Aguilar, 2021-NMCA-018 ¶ 23, 488 P.3d 698, 704.  The Court concludes that the Supreme Court of New Mexico would agree with State v. Aguilar's established elements of the concealing identity crime because the elements are consistent with New Mexico's definition of concealing identity, see NMSA § 30-22-3, which reads:

> 30-22-3. Concealing identity.
>
> Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.
>
> Whoever commits concealing identity is guilty of a petty misdemeanor.

NMSA § 30-22-3.  New Mexico's concealing identity statute contains three elements: (i) concealing identity; (ii) intent to intimidate, hinder, or interrupt an officer in legal performance of his duty; and (iii) the event takes place in New Mexico or is subject to New Mexico law.  See NMSA § 30-22-3.  The Court, therefore, predicts the Supreme Court of New Mexico would adopt the concealing identity elements in State v. Aguilar, because they mirror the substance of New Mexico's concealing identity statute.

(Mitchell); Hearing I Tr. at 34:14-21 (Mead).  Diaz' actions meet the elements in <u>State v. Aguilar</u>, 2021-NMCA-018 ¶ 23, 488 P.3d 698, 704: (i) Diaz conceals his identity by not telling the police his name and other identifiers when asked; (ii) Diaz hinders the police officers in their questioning by not being forthcoming about his identifying information, and (iii) the interaction between Diaz and the police happen in New Mexico on the date alleged.  <u>See State v. Aguilar</u>, 2021-NMCA-018 ¶ 23, 488 P.3d 698, 704.   The evidence indicates that he does not want to tell the police officers his identity, and therefore, by a preponderance of evidence, he conceals identity in violation of NMSC § 30-22-3.

The main issue is whether Diaz' identity concealment supports the possessing a stolen vehicle charge.  Both parties agree that the New Mexico Uniform Jury Instructions set forth the elements for possessing a stolen vehicle.  <u>See</u> Hearing II Tr. at 7:18-8:11 (Roybal)(agreeing with Diaz' Exhibit C as the relevant state jury instruction, which the Court admits into evidence).  The elements are: (i) the defendant has possession of the vehicle in question; (ii) the vehicle is stolen or unlawfully taken; (iii) at the time the defendant has the vehicle in his possession, he knows or has reason to know the vehicle is stolen; and (iv) this happens in New Mexico on or about the date alleged.  <u>See</u> UJI-Criminal 14-1652 NMRA.

Here, the United States satisfies, by a preponderance of evidence, the first two elements.  Ruiz and Mead both testify that they find Diaz in the driver's seat of the stolen vehicle.  <u>See</u> Hearing I Tr. at 22:21 (Mitchell); Hearing I Tr. at 32:10-17 (Mead).  Ruiz and Mead both testify that running the license plate shows that the license plate is stolen, and Mead testifies that running the Vehicle Identification Number ("VIN") shows that the vehicle is stolen.  <u>See</u> Hearing I Tr. at 19:20-23 (Mitchell); Hearing I Tr. at 32:18-21 (Mead).  Diaz, therefore, is in possession of the vehicle, and the vehicle is stolen.  The third element, however, is not met.  The police question Diaz only about his identity, and not whether he knows that the vehicle is stolen.  None of Diaz'

responses to the questioning indicate that Diaz knows anything about the vehicle's history.  Diaz speaks only to his name, his birthdate, his social security number, that he has not been in Farmington for very long, and other identifiers unrelated to the vehicle in question.  See Hearing I Tr. at 25:7-24 (Mitchell); Hearing I Tr. at 34:1-24 (Mead).  The United States does not show, by a preponderance of evidence, that Diaz knows that the vehicle is stolen.  The third element is not met.

Because Diaz commits a misdemeanor in concealing his identity but not a felony in possessing a stolen vehicle, Diaz commits a Grade C violation and not a Grade B violation, pursuant to the Guidelines policy statement § 7B1.1(a)(1),(2), and (3).  Combined with Diaz' criminal history category of VI, Diaz' Guidelines sentencing range for a Grade C violation is 8 to 14 months.  Diaz' sentencing range for his second revocation of supervised release, therefore, is 8 to 14 months.  See Guidelines policy statement § 7B1.4(a).

**IT IS ORDERED** that: (i) Plaintiff United States of America has proven by a preponderance of evidence that Defendant Gregory Diaz commits the misdemeanor of concealing identity; (ii) the United States has not proven by a preponderance of evidence the felony charge of possessing a stolen vehicle in the Second Amended Petition for Revocation of Supervised Release, filed February 27, 2025 (Doc. 89); (iii) Diaz commits a Grade C violation pursuant to the Guidelines policy statement § 7B1.1(a)(1),(2), and (3); and (iv) Diaz' Guidelines sentencing range is 8 to 14 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan Ellison
  United States Attorney
Jaymie Roybal
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Daniel Snyder
  Assistant Federal Public Defender
Albuquerque, New Mexico

  *Attorney for the Defendant*